434 So.2d 460 (1983)
STATE of Louisiana, Appellee,
v.
Terrance D. RUSSELL, Appellant.
No. 15346-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
Writ Denied September 30, 1983.
*461 Herman A. Castete, Winnfield, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., Kermit M. Simmons, Asst. Dist. Atty., Winnfield, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
HALL, Judge.
By grand jury indictment the defendant, Terrance D. Russell, was charged with aggravated rape (LSA-R.S. 14:42) and armed robbery (LSA-R.S. 14:64). After pleading not guilty he was tried before a jury of 12 persons. The jury found the defendant guilty of both offenses, with 10 jurors concurring in the guilty verdicts. The defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the aggravated rape conviction and 20 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the armed robbery conviction, the sentences to run consecutively. The defendant appealed, filing 13 assignments of error. Finding all assignments of error to be without merit, we affirm the convictions and sentences.
The evidence presented by the state establishes the following facts. On March 7, 1982 at about 7:00 p.m. the victim was waiting in her Camaro automobile in front of a grocery store in Winnfield where her friend worked. The defendant, a 16-year-old black male, unexpectedly entered the victim's car on the passenger's side. He had in his hand what appeared to the victim to be a silver pistol wrapped in a white handkerchief. At gunpoint the defendant ordered the victim to drive to Natchitoches. Just north of Gum Springs, while still in Winn Parish, the defendant ordered the victim to drive down an isolated dirt road. While the defendant threatened the victim with the gun he forced her to disrobe and to have sexual intercourse with him on the *462 back seat of the car. He also robbed her of about $140 which he took from her purse.
The defendant then ordered the victim to get into the trunk of the automobile. He first had to make room for her and took out the spare tire and other items and threw them on the ground.
The defendant then drove around for awhile. He drove to the home of Ronald Davis who got into the car and they next went to the home of Ronald Rachel. Both Davis and Rachel lived at or near Natchitoches. The defendant told them that his father had bought him the Camaro automobile. Around 9:30 p.m. all three went riding.
While stopped at a gas station the victim was able to draw the attention of Davis and Rachel. After the defendant refused to let the victim out of the trunk, Rachel persuaded the defendant to let him drive the car. He drove the car to the Natchitoches police station, arriving there about 11:30 p.m., opened the trunk, and released the victim from the trunk. The defendant fled the scene; the Natchitoches police arrested him the next day.
After a short interview, the Natchitoches police took the victim to a local hospital where she received a rape examination. Police officers gathered evidence from the scene of the crime, finding the spare tire and other items which had been taken out of the trunk. After finding what appeared to be a pistol wrapped in a handkerchief on the front seat of the car, officers determined that it was a toy cap pistol. When defendant was arrested he was taken to a Winn Parish hospital for an examination.
The defendant presented a different account of the events in his testimony. He testified that he had met the victim in mid-January when she approached him, asked for his name and address, and asked whether they could meet. He testified that they met on several occasions and they "made love" once sometime in February. He further stated that on the day in question the two had made arrangements to meet. After the victim drove to the dirt road they made love at her suggestion. The defendant testified that the reason the victim was in the trunk of the car was so that she would not be seen when he drove to see some friends in Natchitoches. The defendant also testified that she was jealous because he was seeing another girl. He ran from the police station because he was afraid of being falsely accused of a crime.
Additional facts of the case will be related as necessary to discuss the assignments of error.
Assignment of Error No. 1:
I. "The trial court erred in sustaining the objection of the State when the complaining witness, while under cross-examination, could not explain the details of the alleged rape."
During a detailed cross-examination of the victim about the exact physical positions of the victim and her assailant during the rape, the state objected when the defendant's attorney asked the victim if she were lying flat on the back seat when the rape occurred, on the grounds of the question being argumentative and repetitious. The objection was sustained. Defense counsel argues that the defendant was deprived of his constitutional right to confrontation and full and complete cross-examination of the complaining witness, citing State v. Senegal, 316 So.2d 124 (La.1975).
The right to cross-examination is a principal means by which the believability of a witness and the truth of his testimony are tested, but the right is subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation. State v. Senegal, supra; Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); LSA-R.S. 15:275.
Here, the question objected to was asked after defense counsel had already thoroughly questioned the victim about the details of the rape, including the physical positions of the victim and the assailant. Numerous questions very similar to that objected to had been asked and had been answered fully on direct and cross-examination. The victim had already testified that *463 she was lying on her back in the back seat with her head flat against the bottom part of the back seat. There was no missed opportunity on the part of the defense to thoroughly cross-examine on relevant and material issues. The question asked was substantially repetitious and appears to have been unnecessary and somewhat harassing. No substantive issues were brushed aside in this case. The defendant does not complain of any specific prejudice such as that in State v. Senegal, supra. The trial judge did not abuse his wide discretion. See State v. Kenner, 384 So.2d 413 (La.1980); State v. Murray, 375 So.2d 80 (La.1979); State v. Nero, 319 So.2d 303 (La.1975); State v. Clouatre, 262 La. 651, 264 So.2d 595 (La.1972).
This assignment of error is without merit.
Assignments of Error Nos. 2 and 3:
II. "The trial judge erred in allowing the introduction of items of clothing marked `S-6'."
III. "The trial court erred in allowing the introduction of evidence marked `S-2'."
Counsel for defendant complains that the court erred in allowing the introduction into evidence of certain items of the victim's clothing without a proper foundation being laid in that a complete chain of possession from the time that the items were seized until trial was not established by the state.
The proper foundation for the admission into evidence of demonstrative evidence is one of identification. Identification can either be visual as by a witness who identifies the evidence in court or by a chain of custody. State v. Demouchet, 353 So.2d 1025 (La.1977). In either case the ultimate question is whether it is more probable than not that the admitted evidence is the same evidence that was seized. State v. Roussel, 381 So.2d 796 (La.1980); State v. Godeaux, 378 So.2d 941 (La.1979). A lack of positive identification goes to the weight of the evidence and not admissibility. Ultimately, connexity and identification are factual matters for determination by the trier of fact. State v. Krolowitz, 407 So.2d 1175 (La.1981).
The clothing which the victim had on at the time she was released from the trunk of the automobile and then taken to the hospital was handed by a nurse at the hospital to detective Thompson who gave them to patrolman Guilliam in deputy Mixon's presence, and Guilliam gave them to Mixon. Other items of clothing were found in the victim's automobile and were taken into possession by deputy Mixon. The items of clothing were placed in packets and tagged.
At trial deputy Mixon visually identified the clothes which were obtained from the victim's car and detective Thompson visually identified the clothes obtained at the hospital. Also, the chain of custody of both packets of clothing appears to have been established by a preponderance of the evidence.
These assignments of error are without merit.
IV. "The trial court erred in allowing the introduction of evidence marked `S-18' and `S-19', being the birth certificate of Terrance D. Russell and the Winn Parish Sheriff's Department worksheet, respectively."
Counsel for defendant objected to the introduction into evidence of a certified copy of the defendant's birth certificate and a worksheet prepared by an investigator for the sheriff's office who identified the worksheet as having been prepared by him from answers given upon interrogation of the defendant. The ground for the objection was irrelevancy.
The purpose of the evidence was to establish the defendant's age. He was born December 18, 1965 and was 16 years of age at the time of the crime. The documents were relevant in this respect to establish jurisdiction in the district court rather than the juvenile court under LSA-R.S. 13:1570 A(5). Further, no specific prejudice to the defendant is shown. State v. Humphrey, 412 So.2d 507 (La.1982).
This assignment is without merit.
*464 Assignment of Error No. 5:
V. "The trial court erred in overruling the objection to the opinion of Officer Mixon regarding the toy pistol used in the alleged crime."
Counsel for the defendant argues that the trial court erred in overruling his objection to the testimony of officer Mixon as to his opinion of whether or not the toy pistol used in the crime appeared to be a real pistol. It is contended that the officer was not qualified as an expert and that the officer's opinion usurped the role of the jury as the fact finder.
The officer was asked what he thought when he first saw the pistol wrapped in the handkerchief on the front seat of the car and after defense counsel's objection was overruled, answered that he thought it was a real gun. He was asked what his reaction was when he picked the gun up and after defense counsel's objection was overruled, answered that he picked it up very carefully still believing that it was a real gun.
It should first be noted that the police officer had previously testified without objection on this same point. He testified that when he saw the object in the car he identified it as a pistol. He was asked if there was any question in his mind that it was a pistol and answered, without objection, that there was no question at all. He was asked if he treated it as a pistol and as if it were loaded and he answered that he did. The testimony given later to which objection was made was merely cumulative to that already presented.
The grounds of the objection was irrelevancy. The factual issue of whether the toy pistol wrapped in a handkerchief could reasonably have been perceived by the victim to be a real pistol was a material issue. The testimony of the experienced police officer as to how the pistol wrapped in a handkerchief appeared to him was relevant evidence and was corroborative of the victim's testimony and had probative value. The testimony of the officer was not so much opinion evidence as a statement of a perception or natural inference from something he observed. See State v. Prestridge, 399 So.2d 564 (La.1981); State v. Haarala, 398 So.2d 1093 (La.1981). The objection to the testimony was correctly overruled.
This assignment of error has no merit.
Assignment of Error No. 6:
VI. "The trial court erred in allowing the witness, Pat Wojtkiewicz, to be qualified as an expert on fingerprinting."
The state sought to qualify Pat Wojtkiewicz, employed as a criminalist in the Northwest Louisiana Crime Lab, as an expert in forensic serology and in fingerprint identification. Counsel for defendant stipulated that the witness is an expert in the field of forensic serology but objected to his qualification as an expert in fingerprint identification. The court recognized the witness as an expert in both fields.
It was established that the witness obtained a BS degree in biology from LSU-S and a Master of Science degree in microbiology from Northwestern State University. He had experience in fingerprint analysis at the crime lab and had completed an 80-hour fingerprint classification and identification or comparison course. He had not previously testified in court on fingerprint analysis.
The trial court did not abuse its discretion in accepting the witness as an expert. He has an impressive background as a criminalist with some training and experience in fingerprint analysis. See LSA-R.S. 15:466; State v. Coleman, 406 So.2d 563 (La.1981); State v. Chatman, 337 So.2d 1106 (La.1976).
Moreover, the only testimony given by the witness concerning fingerprints was that no identifiable fingerprints were recovered from the items examined and that two prints found did not match the prints of the defendant. Accordingly, the witness's testimony was not in any way prejudicial to the defendant.
There is no merit in this assignment of error.
Assignments of Error Nos. 7, 8, 9, 10, 11 and 12:
VII. "The trial court erred in allowing an expert to testify regarding statistical *465 evidence without a proper foundation for its basis."
VIII. "The trial court erred in allowing testimony by an expert regarding testimony secured from the alleged victim and assailant without proper foundation being laid for the introduction of evidence upon which the opinions were based."
IX. "The trial court erred in allowing the introduction of physical evidence obtained from the alleged victim and assailant without proper foundation being laid."
X. "The trial court erred in allowing the introduction of the Exhibit `S-9' without proper foundation being laid."
XI. "The trial court erred in allowing statistical evidence to be introduced without proper foundation being laid and as an exception to the hearsay rule."
XII. "The trial court erred in allowing the introduction of `S-1' and `S-9', being the rape kit and blood samples of the defendant, respectively."
These assignments of error all relate to the testimony of the forensic serology expert, Wojtkiewicz, concerning his analysis of vaginal swabbings taken from the victim at the Natchitoches Parish Hospital and blood taken from the defendant at the Winn Parish Hospital, and to the introduction into evidence of the samples taken.
Counsel for defendant objected to the testimony and evidence on the grounds that the state failed to lay a proper foundation by having the witnesses make an in-court identification of the victim and the defendant as the persons from whom the samples were taken and by not establishing a complete chain of possession of the samples taken. Objection was also made to statistical information tending to show the percentage of the general population which could have been the contributor of the seminal fluid found in the victim's vaginal vault. The objections were overruled and the evidence allowed.
The sole purpose and impact of this testimony and evidence was to establish that the victim had intercourse on the evening in question and that the defendant could have been the contributor of the seminal fluid.
In his testimony the defendant admitted having intercourse with the victim on the evening in question, claiming it was consensual. Accordingly, any question or issue as to the admissibility of evidence tending to corroborate the victim's testimony that the defendant had intercourse with her, a fact that the defendant admitted was true, is moot or inconsequential. Any error as to the admissibility of such evidence would be harmless and nonprejudicial. LSA-C.Cr.P. Art. 921.
These assignments of error have no merit.
Assignment of Error No. 13:
XIII. "The trial court erred in sustaining the objection by the State's testimony of Eddie Russell, brother of the defendant."
The defendant attempted to establish a defense of consensual intercourse and testified on his own behalf that he had an on-going relationship with the victim, and that the victim telephoned him on occasion. Defendant's 15-year-old brother testified that a white female telephoned the defendant a week before the offense. The brother received the call at his aunt's home where the defendant's family received their telephone calls.
During the course of the brother's testimony he was asked by defense counsel if he could tell whether the person who called, who he had already identified as a woman, was white or black. The witness answered "yes, sir" but before he could complete the answer the state objected on the ground that the question called for a conclusion and it had not been established that the witness had the qualifications to make such a conclusion. The objection was sustained. By further questions an effort was made to qualify the witness as able from experience to identify a voice on the telephone as either *466 male or female, and as either black or white. When the witness was again asked whether he could tell if the person on the telephone was black or white the state objected and after a lengthy argument the court ruled that the objection was sustained to the question asked but that he would allow the witness to state his impression as to the race of the person he was speaking to. The witness then answered that it was his impression that it was a white woman.
Although an initial objection was sustained, the defense was subsequently allowed to elicit from the witness the witness's impression of the sex and race of the caller. Because the defense was ultimately allowed to elicit the testimony desired from the witness, there is no error or prejudice to the defense.
This assignment of error is without merit.
Decree
The convictions and sentences of the defendant, Terrance D. Russell, are affirmed.
Affirmed.